UNITED STATES v. McHUGH et al.

(District Court, W. D. Washington, N. D.   November 23, 1917.)

No. 3780.

1. CONSPIRACY ⬥23—OFFENSE—NATURE OF.
A conspiracy may be defined as a combination of two or more persons by concerted action to do an unlawful thing, or to do a lawful thing in an unlawful manner, and while the gravamen of the offense is the conspiracy, some overt act by one or more of the conspirators is necessary.
[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

2. CONSPIRACY ⬥47—SELECTIVE SERVICE ACT—PROOF.
In a prosecution for conspiracy to violate Selective Service Act May 18, 1917, the common design is the essence of the charge, and proof that the alleged conspirators knowingly worked together for a common illegal

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

purpose will establish a conspiracy; it not being necessary to show a formal explicit agreement or undertaking.

3. ARMY AND NAVY ☜20—SELECTIVE SERVICE ACT—EXEMPTIONS.

Under the Selective Service Act and regulations making all male citizens of certain ages liable to military duty, registrants having dependent parents may be exempted.

4. ARMY AND NAVY ☜20—SELECTIVE SERVICE ACT—"DEPENDENT."

A "dependent" is a person who is not self-sustaining and relies on another for support, and under the Selective Service Act and regulations, providing for exemptions to registrants having dependent parents the exemption should not be granted if the parent is able to maintain himself, either from property which he owns or from his labor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent.]

5. CRIMINAL LAW ☜651—EVIDENCE—APPEARANCE OF DEFENDANT.

In a prosecution for conspiracy to violate Selective Service Act, by falsely claiming exemption on the ground that registrant's father was dependent on him for support, the jury could determine the physical condition of the father from their observation of him while on the stand, etc., and his physical infirmities need not be established by medical expert testimony.

6. CRIMINAL LAW ☜369(1)—TRIAL—OTHER OFFENSES.

In a prosecution for conspiracy to violate the Selective Service Act, where it was asserted that a registrant and his father falsely represented that the father was dependent on the registrant, the jury cannot consider whether the father was guilty of misapplication of funds in his possession which he claimed did not belong to him, but were trust funds.

7. CRIMINAL LAW ☜561(1)—"REASONABLE DOUBT."

A "reasonable doubt" is such a doubt as would make a man of ordinary prudence and sensibility and decision, in determining an issue of like concern to himself, pause or hesitate in arriving at his conclusion; and that is the criterion for the jury in a criminal prosecution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Doubt.]

John Edward McHugh, James A. McHugh, and James Gordon were indicted for conspiracy to commit an offense against the United States by violating the Selective Service Act of May 18, 1917. Verdict directed for the last-named defendant, and the case against the other defendants submitted to the jury.

Clay Allen, U. S. Atty., and Ben L. Moore, Asst. U. S. Atty., both of Seattle, Wash.

Beeler & Sullivan and Winter S. Martin, all of Seattle, Wash., for defendants.

NETERER, District Judge. The issue in this case is raised by the indictment which has been returned by the grand jury, to which each of the defendants have entered a plea of not guilty, and that places in issue every material allegation in the several counts of the indictment. While the indictment has two counts, it in fact charges only one offense. It is a different statement of the same charge against the defendants, and it will be considered only as one count; and

when I refer to the indictment, or to any count in the indictment, it will simply be to the one offense. Count 2 completely states the charge with the reference therein made to count 1.

It is charged that the defendants did unlawfully and feloniously combine, conspire, confederate, and agree together, and one with the other, to commit an offense against the United States; that is, to violate the act of Congress approved May 18, 1917 (40 Stat. 76, c. 15) entitled "An act to authorize the President to increase temporarily the military establishment of the United States," and the regulations prescribed by the President, the object and purpose of the conspiracy being to obtain the discharge of John Edward McHugh from the Selective Service Act upon false, fraudulent, and fictitious grounds, and to which the said John Edward McHugh was not lawfully entitled; that each of the defendants knew that the said John Edward McHugh was at that time not entitled, and would not thereafter be entitled, to such exemption from the said act and regulations, it being the intent and purpose of the defendants to make and file a false, fraudulent, and fictitious claim for exemption from said act and the regulations made by the President, by asserting that he is the son of an aged and infirm father, dependent for support upon the labor of the said John Edward McHugh, and each and all defendants, knowing the said assertion and claim to be false, made certificates and affidavits in support of such claim, and that said affidavits and claim were false, as fully set out in the indictment, and then states the doing of certain overt acts to carry out the objects of the conspiracy as set out. In the indictment, likewise, is set out the charge that the statements with relation to the income were false, and known to be false by the defendants.

[1, 2] A conspiracy may be defined as a combination of two or more persons by concerted action to do an unlawful thing, or to do a lawful thing in an unlawful manner. The gravamen of the offense charged is conspiracy, but some overt act in furtherance of the conspiracy must be done by some one of the conspirators in order to give life to the conspiracy. To make the statute clearer, if possible, I will call your attention to its three essential elements: First, the act of conspiring together of two or more persons; second, to commit the offense charged in the indictment, which is a violation of the Selective Service Act, as charged; and, third, the doing of what is termed as an overt act, or the element of one or more of such parties doing one or more acts to effectuate the object of the conspiracy.

The common design is the essence of the charge, and, while it is not necessary, to establish a conspiracy, to prove that two or more persons met together and entered into a formal and explicit agreement or understanding, or that they should directly or by words or in writing state what the unlawful scheme was to be, or the general understanding or detail of the plan or means by which an unlawful combination was to be made effective, if they knowingly work together for a common purpose, and that purpose is the illegal act charged as their object, and if the acts of the parties so dovetail and

fit together that the conclusion is inevitable that there was an under-standing between them as to the thing to be done, as charged, it would establish a conspiracy. In other words, where an unlawful object is sought to be effectuated, and two or more persons, actuated by a common purpose of accomplishing that object, work together in any way in furtherance of the unlawful scheme, every such person is a party to the conspiracy, no matter what part he may take in carrying out the general plan; and where several persons are proven to have combined together for the same illegal purpose, any act done by one of the parties in furtherance of the original concerted plan, and with reference to the common object, is, in contemplation of the law, the act of the whole party, and any statement or declaration made by one of the parties during the pendency of the illegal enterprise is not only evidence against himself, but is evidence against the other parties, who, when the combination is proven, are as much responsible for such declaration, and acts to which they relate, as if made or committed by themselves.

In this case evidence was received of a statement claimed to have been made by the defendant James A. McHugh, the father, in the absence of the other defendants, John Edward McHugh and Gordon. So far as Mr. Gordon is concerned in this case, the action will be dismissed. In other words, you will be directed to return a verdict of not guilty as to him. There is no evidence before the court that would justify the court in submitting to you the claim of the government, charging him with being a party to the conspiracy in this case, if one did exist. This statement of the defendant James A. McHugh cannot be received against John Edward McHugh, unless it is established by the evidence that the conspiracy was entered into.

[3] You are instructed that, under the Selective Service Act referred to, all male citizens of the United States, and others enumerated, and which is not material here, are liable to military duty; and the law provides the manner of selecting the persons within military ages for services in the National Army. It also provides that certain men who are eligible may be exempted from military duty under certain conditions, and that a person selected may at the time of registration, or later, when actually called, make his claim for exemption, and, if he comes within the class of persons provided, it may be granted. One of the classes exempted are those who have persons designated by the act dependent upon them for support. It is sufficient for the purpose of this case to say that a man having a father or mother dependent upon him for support may be exempt. In this case it is charged that the defendants conspired, as I have already stated, to have John Edward McHugh make a false claim for exemption, asserting that his father is dependent upon him for support, and that this claim was supported by affidavits made by the defendants James A. McHugh and James Gordon which have been filed in this case.

The government contends that the claim made by the defendant John Edward McHugh was false, that the defendants knew it was false, and that it was the intent and purpose of the defendants to

evade the law in the manner charged; while the defendants contend that the claims made by John Edward McHugh were true, or at any rate they believed them to be true, and they acted honestly with relation to the claim made. The issue before you is not complicated. It is simply to determine whether the defendants did conspire as charged in this indictment, and did the acts which it is charged, or some of the acts charged in the indictment as having been performed by them. The claims made by the defendants for exemption might be untrue, and yet the defendants might not be guilty of the crime charged. It is also contended on the part of the defendants that, if the statements made by the defendants were understatements of income or overstatements of the physical condition of James A. McHugh, the father, these statements were merely errors of judgment, and were made from honest motives, and not purposely or intentionally to mislead the officers of the government, whose duty, under the Selective Service Act and the rules promulgated for carrying it out, it was to determine between these conditions. You have the story from both sides and you must determine where the truth in the case lies, and what the fact therefore, is.

You are instructed that intent is an element of the offense charged, and it must be established by the same degree of proof as any of the other elements that enter into the completed offense. It is psychologically impossible to enter into a man's mind and determine by testimony what the actual intent was. So that you must conclude with relation to the element of intent from the facts disclosed by the evidence in this case, taking into consideration the conduct of the parties with relation to the matter charged, and every circumstance which bears upon the issue, bearing in mind that a man intends the natural consequences of his act intentionally or knowingly done; and when you have considered all of the acts of the parties, their relation to each other, the object to be attained, the things that were done, the circumstances under which they moved, and the motives that prompted the various acts so far as disclosed from the evidence, from all these you will determine what the intention of the parties really was.

[4, 5] You are instructed that a dependent is one who is sustained by another; one who relies upon another for support; a person who is not self-sustaining. In order for the defendant James A. McHugh to be dependent for support upon the defendant John Edward McHugh, every other source of support or sustenance would have to be eliminated. If the defendant James A. McHugh had money or means from which he could get support, or had property which could be converted into means of support, then he would not be dependent, or if the defendant James A. McHugh was able to support himself by physical labor, irrespective of means or money. Suppose he had no lands and no money; is he physically in such a condition that he could support himself and family, together with the help of other members of the family, without John Edward McHugh's support—such members of the family as the testimony discloses?

The exemption provision made in this statute is for the purpose of not depriving an indigent person of means of support, not the particular means of any person; and in considering the dependency of the defendant James A. McHugh you will take into consideration all the testimony which has been offered and admitted with relation to his status and what he owns. The government's witnesses have testified that he owns several different tracts of land—you will bear in mind what the testimony was—and have placed values upon the respective tracts. Those values you will recall from the evidence. It is also admitted in evidence that the defendant James A. McHugh owns 28 cows, 4 horses, and some farming implements and utensils; the value, I believe, admitted to be $2,460, or in excess of $2,400. The amount you will take from the admission that was made or from the evidence. The defendant James A. McHugh admits that he has on deposit money amounting to something over $7,000, I believe. You will remember what the testimony discloses. But he states that this is all held by him in trust—$7,000 in trust for his little boy Peter, $300 as guardian for one party, and $600, I believe, as guardian for another party. He says he is entitled to receive the income from the $7,000; but, of course, he is not entitled to receive any income from any trust funds held by him as guardian. Now, if you believe, or if it raises a reasonable doubt in your minds, as to whether he holds this money in trust, then you cannot consider the amount held in trust in arriving at his means of support. You can only consider the income upon the $7,000, whatever that may be, as disclosed by the evidence. In determining whether these funds are trust funds, you will take into consideration all the evidence which has been received, and weigh that evidence by the same rule that you will weigh the other testimony in the case, and to which I will refer later in these instructions.

[6] You are instructed further, with reference to the trust funds referred to, that the defendant James A. McHugh is not on trial for the misuse or misapplication of trust funds in this case. Such liability would only arise and could only be presented in a state court, and after demand had been made for the money; and you will not consider this matter of trust funds in any relation of accounting, or as a matter of default in the performance of duty as a guardian of public funds, as stated, and you will only consider the trust funds matter with relation to the matters bearing upon the income.

You are further instructed that, as to the income from the lands, cows, and horses which he owns, you must determine from the evidence; but you are instructed that the law does not contemplate that a man can hold property which he does not use himself, and the value of which can be utilized for the support of himself and family, and not use it for that purpose, and claim that he is dependent. Before the defendant James A. McHugh can be dependent for support upon John Edward McHugh, he must exhaust his own resources. By that I mean his property in excess of what he needs to properly house his family, and such as his family can cultivate for their own use and for the purpose of pasturing such cows as may give milk for his family and supply the family with butter for their home consumption. He cannot

operate a dairy ranch at a loss, and claim the son's labor as exempt to pay the expenses of such ranch, or for his support, when he has other property of value which can be utilized for his support.

Much evidence has been received and comment made with relation to income for the year previous to the time of the charge made. That was permitted to go before you, so that you would have all of the facts and circumstances before you. If you find that the defendant James A. McHugh was dependent upon John Edward McHugh for support, and believe or have any reasonable doubt as to whether this statement was made ignorantly as to income, even though you believe it was wrong, then, of course, the defendants would not be guilty upon that charge.

Evidence was likewise received upon the physical infirmities of the defendant James A. McHugh, and that condition is a fact to be established by the evidence in the case, and need not be established by medical expert or physician testimony, where the facts presented to the jury are convincing or sufficient to raise a reasonable doubt in the minds of the jury; but when the defendant had consulted a doctor with relation to the illness complained of, and has not consulted him for six years, the jury must consider such fact in connection with all the evidence bearing upon the matter of physical infirmity. The jury also has the right to take into consideration their observation of the defendant before the jury—his appearance—and consider that with his testimony, and all other testimony presented, and conclude with relation to his physical infirmity. Upon this phase of the case you are instructed, however, that if you are convinced by the evidence that the defendant is not dependent, and that he has means of support of his own, then his infirmities would not be material.

You are further instructed that evidence has been presented in this case of reputation as to truth and veracity in the community in which he resides, and likewise as to being a law-abiding citizen. You are instructed that such evidence is competent in a criminal case. It is the only instance where hearsay testimony can be received. Character or reputation testimony is necessarily hearsay. It is testimony as to what the people—the man's neighbors or the people residing in the community where he lives—think about him or say about him with relation to his truthfulness or with relation to his being law-abiding; and it is based upon the presumption that, when a man has lived in a community a long time and has earned a reputation, he is entitled to it, and that what his neighbors, what people in the community, say about him, should be considered by the jury. You will give consideration to this testimony that was presented, for it was presented on both sides. Now, this evidence is only valuable when the witnesses disclose to you that they have a basis upon which to base their conclusion; and you will approach that testimony from that viewpoint, and give the weight to those witnesses who you believe are the better qualified to testify with relation to reputation for truth and veracity and for being law-abiding. You will weigh that testimony by the same rule as you will all of the other evidence in the case.

You will try this case fairly and impartially, bearing in mind that

you are the sole judges of the facts. The responsibility of finding what the fact in this case is rests solely upon you, and you will appreciate that the United States does not want an innocent man convicted, nor does it want a guilty man to escape after he has been proven guilty beyond a reasonable doubt. The issue in this case is of great importance to the government and to the defendants. The government can only be maintained by the enforcement of law. You, as jurors, are not concerned with the policy of the law. You are simply concerned with the facts in this case as applicable to the law which has been passed by Congress. You may personally believe the law to be bad, and one which should be repealed; but that is not a matter of your concern, nor mine. That is a matter for the Congress of the United States, and it is the lawmaking body provided by the Constitution; and if officers neglect to enforce the law, or jurors decline to fairly and honestly discharge their duty, and law enforcement should thereby fail, it would be only a short time until a condition of anarchy would obtain, and no stable government could be maintained.

The defendants are clothed with the presumption of innocence, which prevails throughout the trial and until it is overcome by evidence in this case which shows to your satisfaction beyond every reasonable doubt that both of the defendants are guilty. In this case you cannot find one of the defendants guilty and the other not guilty. One man cannot conspire with himself. It takes two to conspire; and the testimony, as I told you a moment ago, does not show that Mr. Gordon knew anything about this, except as he was requested by the defendant James A. McHugh to come in and sign an affidavit. Now, what he did there was wrong. He signed something which he says that he knew nothing about. Of course, if he knew nothing about it, he could not have conspired, and the testimony of the witnesses on the part of the government is not of such a character as to overcome the presumption of innocence, and not enough to connect him with a conspiracy, more than the act of signing the affidavit. The defendants James A. McHugh and John Edward McHugh, therefore, are either both guilty or both innocent of this offense.

[7] Now, a reasonable doubt is just such a doubt as the term implies. It is a doubt for which you can give a reason. It is such a doubt as would make a man of ordinary prudence and sensibility and decision, in determining an issue of like concern to himself as that before the jury to the defendants, pause or hesitate in arriving at his conclusion. It is such a doubt as would be created only by the want of evidence or a doubt which is raised by the evidence itself, and must not be merely speculative, imaginary, or conjectural. A juror is satisfied beyond a reasonable doubt if, from a candid consideration of all the evidence, he has an abiding conviction of the truthfulness of the charge. When a juror is satisfied to a moral certainty of the truthfulness of the charge made, then he is satisfied beyond every reasonable doubt.

In this case each party has examined you with relation to prejudice, or preconceived notions of the issue, or knowledge of the facts, and you have convinced both sides that you are free from any prejudices

or opinions, and can determine this issue solely upon the evidence which has been presented. Both sides have a right to rely upon this conception of your qualifications, and I have no doubt you will eliminate from your minds every influence which would have a tendency to detract from the issue, and will concentrate your thought alone upon the determination to do justice and right as your quickened conscience, aroused by the serious duty before you, may dictate your every thought and effort, being divorced from passion, prejudice, or sense of relation to things which might detract your thought from the real issue in this case, and that is the guilt or innocence of these defendants, and by a fair and honest consideration conclude, so that the government and the defendants may feel that a fair, honest, and conscientious consideration has been given to the matter in hand.

As I have intimated a moment ago, you are the sole judges of the facts in this case, and you must determine what they are. Any reference that I may have made to any fact in this case, or expressions used to convey to you some idea, was not done with the purpose of expressing any opinion which I may have of a fact; and I desire you to eliminate from your mind and from your consideration any such thought that you may have received as to any opinion of mine with relation to any fact, and determine this yourself solely upon the evidence which has been presented.

You are likewise the sole judges of the credibility of the witnesses who have testified before you, and in determining the weight or credit you desire to attach to the testimony of any witness you will consider the demeanor of the witness upon the witness stand, the opportunity of the witness for knowing the things about which he has testified, his interest or lack of interest in the result of this controversy, and the reasonableness or unreasonableness of the story of the witness, and from all of these determine where the weight of the evidence is, and where the truth in the case lies. You will attach to the testimony of every witness who has testified before you the same test that you would apply to any other person in the ordinary affairs of life whose truthfulness or falsity may be under consideration by you. From your conclusions there is no appeal. I merely suggest this, so that you may be impressed with the responsibility that rests upon you. If you find that any witness has willfully testified falsely concerning any material fact in this case, you have a right to disregard the testimony of such witness entirely, except in so far as it may be corroborated by other credible evidence or circumstances developed upon the trial of the case.

It will require your entire number to agree upon a verdict, and when you have concluded you will cause the verdict to be signed by your foreman, whom you will elect immediately upon retiring to the jury room. The form of the verdict will be: "We, the jury in the above-entitled cause, find the defendants John Edward McHugh and James A. McHugh ——— guilty." If you find them guilty, you will write in the word "are." If you find them not guilty, you will write in the word "not." The other form will be: "We, the jury in the above-entitled cause, find the defendant James Gordon not guilty." You will have these three with you.

After numerous exceptions taken by counsel for defendants, the court added the following:

Where there are two inferences possible, one of guilt and one of innocence, that of innocence should be adopted by the jury, and that every reasonable doubt upon any fact disclosed in the testimony should likewise be resolved in favor of the defendants.