## SINGER ET AL. *v.* UNITED STATES.

No. 30.   Argued November 9, 10, 1944.—Decided January 2, 1945.

 *Messrs. John W. Cragun* and *William Stanley* submitted for petitioners.

*Mr. James M. McInerney* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Tom C. Clark,* and *Messrs. Robert S. Erdahl, Ralph F. Fuchs,* and *Leon Ulman* were on the brief, for the United States.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioners are father and son.  They and one Walter Weel were indicted in one count charging a conspiracy to

aid Willard I. Singer in evading service in the armed forces. No overt act was alleged. A demurrer to the indictment was overruled which claimed that an overt act was necessary. Petitioners were tried before a jury, found guilty and sentenced. Petitioner Willard I. Singer received a sentence of one year and a day; petitioner Martin H. Singer received a suspended sentence and was placed on probation for two years. Motions in arrest of judgment and for a new trial were denied. 49 F. Supp. 912. The judgments of conviction were affirmed by the Circuit Court of Appeals. 141 F. 2d 262. The case is here on a petition for a writ of certiorari which we granted, limited to the question whether the conspiracy charged constitutes an offense under § 11 of the Selective Training and Service Act of 1940, 54 Stat. 885, 894–895, 50 U. S. C. App. § 311.

The relevant part of § 11 reads as follows:

"Any person charged as herein provided with the duty of carrying out any of the provisions of this Act, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said Act, rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making of, any false statement or certificate as to the fitness or unfitness or liability or nonliability of himself or any other person for service under the provisions of this Act, or rules, regulations, or directions made pursuant thereto, or who otherwise evades registration or service in the land or naval forces or any of the requirements of this Act, or who knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the

requirements of this Act, or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act, or any person or persons who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto, *or conspire to do so,* shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment . . ." (Italics added.)

The section does not require an overt act for the offense of conspiracy. It punishes conspiracy "on the common law footing." *Nash* v. *United States,* 229 U. S. 373, 378. Hence the indictment is sufficient if the words "or conspire to do so" extend to all conspiracies to commit offenses against the Act. It is insufficient if the conspiracy clause is limited to conspiracies to "hinder or interfere in any way by force or violence" with the administration of the Act. If it is so limited then it would have been necessary to sustain the indictment under § 37 of the Criminal Code, 18 U. S. C. § 88, which requires the commission of an overt act.[1]  See *United States* v. *Rabinowich,* 238 U. S. 78, 86.

Though the matter is not free from doubt, we think the conspiracy clause of § 11 is not limited but embraces all conspiracies to violate the Act. That is the view of the Court of Appeals for the Second Circuit (*United States* v.

---

[1] That section provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

*O'Connell,* 126 F. 2d 807) as well as the court below. We think that construction is grammatically permissible and conforms with the legislative scheme.

Seven offenses precede the conspiracy clause. Each is set off by a comma. A comma also precedes the conspiracy clause and separates it from the force and violence provision just as the latter is separated by a comma from the clause which precedes it. The punctuation of the sentence indicates that the disjunctive conspiracy clause is the last independent clause of a series not a part of the preceding clause. A subject of "conspire" must be supplied however the conspiracy clause is read. It is true that the subject must be plural and that the subject of each of the preceding clauses is singular except "any person or persons" in the force and violence clause. But it does not follow that the conspiracy clause is hitched solely to the preceding clause. When read as applicable to all the substantive offenses, the verb "conspire" is proper since some of the subjects would be singular and some plural.

A question remains concerning the word "so." The structure of the sentence as a whole suggests that the reference is to all the offenses previously enumerated. The seven offenses which precede the conspiracy clause are substantive offenses. Each carries the same penalty and is punishable in the same manner. The conspiracy clause comes last and is separated from the preceding one by a comma. If the word "so" is read restrictively, then one type of conspiracy is set apart for special treatment. If our construction is taken, a rational scheme results with the same maximum penalties throughout—all types of conspiracies being treated equally, just as the substantive offenses are treated alike. No persuasive reason has been advanced why the words "conspire to do so" should not carry their natural significance. The principle of strict construction of criminal statutes does not mean that they

must be given their narrowest possible meaning. *United States* v. *Giles,* 300 U. S. 41, 48.

The legislative history throws only a little light on this problem of the construction of § 11. What appears is a brief statement by Senator Sheppard, Chairman of the Senate Committee on Military Affairs, who explained the bill on the floor of the Senate. He stated that the section which later became § 11 of the present Act "contains the penalty provisions of the bill, which are substantially the same as those of the World War act. Experience with the World War provisions shows that they worked satisfactorily in providing the necessary protection." 86 Cong. Rec. 10095. The Selective Draft Act of 1917, 40 Stat. 76, 50 U. S. C. App. § 201 *et seq.,* contained no conspiracy provision. And the penalties prescribed for the substantive offenses were milder than those contained in the present Act.[2] Conspiracies to commit nonviolent offenses were prosecuted under § 37 of the Criminal Code which, as we have noted, requires an overt act.[3] Conspiracies involving the use of force were prosecuted under § 6 of the Criminal Code, 35 Stat. 1089, 18 U. S. C. § 6, which punishes conspiracies "by force to prevent, hinder, or delay the execution of any law of the United States."[4] Sec. 37 of the Criminal Code provides a pun-

---

[2] The 1917 Act punished various substantive offenses of the kind covered by § 11 of the present Act by imprisonment for not more than one year. See §§ 5 and 6.

[3] See *United States* v. *McHugh,* 253 F. 224; *Anderson* v. *United States,* 269 F. 65; *O'Connell* v. *United States,* 253 U. S. 142; *Goldman* v. *United States,* 245 U. S. 474.

[4] *See Enfield* v. *United States,* 261 F. 141; *Reeder* v. *United States,* 262 F. 36. But see *Haywood* v. *United States,* 268 F. 795.

Conspiracies were also prosecuted under § 4 of the Espionage Act of June 15, 1917, 40 Stat. 217, 219, 41 Stat. 1359, 50 U. S. C. § 34, which like § 37 of the Criminal Code requires an overt act. See *Frohwerk* v. *United States,* 249 U. S. 204; *Pierce* v. *United States,* 252 U. S. 239. But that section is applicable only in time of war and

ishment of not more than two years' imprisonment or a fine of $10,000 or both. Sec. 6 of the Criminal Code provides a punishment of not more than six years' imprisonment or a $5,000 fine, or both. Sec. 11 of the present Act provides imprisonment for not more than five years or a fine of $10,000 or both. Both § 37 and § 6 of the Criminal Code were in force when the present Act was adopted. The addition of the conspiracy clause of § 11 was a departure from the 1917 Act and a substantial departure at that. Moreover, the "World War provisions" which, according to Senator Sheppard, had provided "the necessary protection" were certainly not the provisions of the 1917 Act alone but the conspiracy statutes as well. Hence, we do not take his statement to mean that the penalty provisions of § 11 are substantially the same as those contained in the 1917 Act. We read his somewhat ambiguous comments as indicating that he was comparing the provisions of § 11 with the provisions of the 1917 Act plus the provisions of other statutes which were employed in enforcing that Act. Thus Senator Sheppard's statement suggests that § 11 was designed to catalogue the various offenses against the Act.[5] It suggests that the purpose of including a conspiracy clause in § 11 was to furnish a single basis for prosecuting all conspiracies to commit offenses against the Act. That results in punishments for some conspiracies being increased. But there was likewise an increase in the penalties for substantive offenses.

hence was not operative when the present Act became the law on September 16, 1940.

[5] Whether, as assumed in *United States* v. *Offutt,* 127 F. 2d 336, there may be conspiracies to violate § 11 which can still be prosecuted under § 37 of the Criminal Code is a question we do not reach.

If only one of the statutes is applicable to a conspiracy to violate § 11, the latter under which petitioners were convicted is controlling, as it is a later statute prescribing precise penalties for specified offenses. *Callahan* v. *United States,* 285 U. S. 515, 518.

Yet under our interpretation the sanctions provided by § 11 are substantially the same as the sum of the various sanctions provided for the enforcement of the 1917 Act.

The United States suggests that if the conspiracy clause of § 11 is construed so as to apply only to conspiracies to obstruct the Act by force and violence it would merely duplicate § 6 of the Criminal Code and have no effect except to decrease the maximum imprisonment for the offense from six years to five. It is said in reply, however, that under the earlier Act it was uncertain whether conspiracies contemplating the use of force in interfering with its administration could be prosecuted under § 6 of the Criminal Code. Cf. *Reeder* v. *United States,* 262 F. 36, with *Haywood* v. *United States,* 268 F. 795, 799. And it is argued from that fact that the conspiracy clause of § 11 was added to dispel the uncertainty. That is left to conjecture. Though we assume that it was a reason for adding a conspiracy clause to § 11, we cannot conclude that the conspiracy clause which was fashioned is so limited. And where another interpretation is wholly permissible, we would be reluctant to give a statute that construction which makes it wholly redundant. Only a clear legislative purpose should lead to that result here.

Nor do we find force in the suggestion that the conspiracy clause was added merely to fill in gaps left by § 6 of the Criminal Code which covers only conspiracies to obstruct by force "the execution of any law of the United States." It is said that *United States* v. *Eaton,* 144 U. S. 677, established as a principle of federal criminal law that a provision which only punishes violations of a "law" does not cover violations of rules or regulations made in conformity with that law. It is therefore argued that § 6 of the Criminal Code does not embrace violations of rules or regulations and that § 11 filled that gap by adding "rules or regulations" to the force and violence clause. Here

again the legislative history leaves that question wholly to conjecture. *United States* v. *Eaton* turned on its special facts, as *United States* v. *Grimaud*, 220 U. S. 506, 518–519, emphasizes. It has not been construed to state a fixed principle that a regulation can never be a "law" for purposes of criminal prosecutions. It may or may not be, depending on the structure of the particular statute. The *Eaton* case involved a statute which levied a tax on oleomargarine and regulated in detail oleomargarine manufacturers. Sec. 5 of the statute provided for the keeping of such books and records as the Secretary of the Treasury might require. But it provided no penalty for non-compliance. Other sections, however, laid down other requirements for manufacturers and prescribed penalties for violations. Sec. 20 gave the Secretary the power to make "all needful regulations" for enforcing the Act. A regulation was promulgated under § 20 requiring wholesalers to keep a prescribed record. The prosecution was for non-compliance with that regulation. Sec. 18 imposed criminal penalties for failure to do any of the things "required by law." The Court held that the violation of the regulation promulgated under § 20 was not an offense. It reasoned that since Congress had prescribed penalties for certain acts but not for the failure to keep books the omission could not be supplied by regulation. And Congress had not added criminal sanctions to the rules promulgated under § 20 of that Act. The situation here is quite different. Sec. 11 of the present Act makes it a crime to do specified acts, either by way of omission or commission, in violation of the Act or the rules or regulations issued under it. Thus it is a felony for a person to "fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act." Sec. 11 is therefore a law of the United States which imposes criminal sanctions for disobedience of the selective service regulations. Since Congress has made the violation

of regulations a felony, it can hardly be contended that those regulations are not a "law" for the purposes of § 6 of the Criminal Code. But though we assume that *United States* v. *Eaton* was a reason for adding a conspiracy clause to § 11, we cannot assume that the one which was added had the narrow scope suggested. Whatever the reason, words mean what they say. And if we give the words "conspire to do so" their natural meaning, we do not make the Act a trap for the innocent.

We have been advised that Martin H. Singer died on October 1, 1944. The writ is accordingly dismissed as to him (*Menken* v. *Atlanta*, 131 U. S. 405; *United States* v. *Johnson*, 319 U. S. 503, 520) and the cause is remanded to the District Court for such disposition as law and justice require. *United States* v. *Pomeroy*, 152 F. 279, rev'd 164 F. 324; *United States* v. *Dunne*, 173 F. 254.

The judgment as respects Willard I. Singer is

*Affirmed.*

MR. JUSTICE FRANKFURTER, dissenting.

In the past, to soften the undue rigors of the criminal law, courts frequently employed canons of artificial construction to restrict the transparent scope of criminal statutes. I am no friend of such artificially restrictive interpretations. Criminal statutes should be given the meaning that their language most obviously invites unless authoritative legislative history or absurd consequences preclude such natural meaning. There are surely deep considerations of policy why the scope of criminal condemnation should not be extended by a strained reading. The natural reading of the conspiracy provision of § 11 of the Selective Service Act of 1940 [1] confines its ap-

---

[1] 54 Stat. 885, 894, 50 U. S. C. App. § 311. "Any person charged as herein provided with the duty of carrying out any of the provisions of this Act, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform

plication to the immediately preceding clause which punishes "any person or persons who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto." Since no absurd consequences preclude the indicated natural reading of this criminal statute and since all available extraneous aids confirm the rendering which the text invites, I think it should be given it.

It is difficult for me to believe that if one were reading § 11 without consciousness of the problem now before us and merely as a matter of English one would make the "so" in the phrase "conspire to do so" relate back to all that is contained in the twenty-two preceding lines rather than to the "force or violence" clause immediately preceding. The structure of the sentence, grammar, and clarity of expression combine to attribute to the phrase

---

such duty, and any person charged with such duty, or having and exercising any authority under said Act, rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making of, any false statement or certificate as to the fitness or unfitness or liability or nonliability of himself or any other person for service under the provisions of this Act, or rules, regulations, or directions made pursuant thereto, or who otherwise evades registration or service in the land or naval forces or any of the requirements of this Act, or who knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the requirements of this Act, or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act, or any person or persons who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto, or conspire to do so, shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment . . ."

"to do so" a limited reference instead of making "so" carry the burden of the whole paragraph as antecedent. Good sense reinforces these textual considerations. It is made an offense to conspire to violate not only the seven substantive offenses enumerated by Congress but also the multitudinous "rules and regulations." There is an obvious difference between conspiracies to violate by force and violence any rule issued under the Act and a mere unexecuted arrangement between two people peacefully to escape one of such rules.

All extraneous aids confirm rather than contradict this construction.

The only authoritative legislative commentary we have on § 11 is the statement by Senator Sheppard, Chairman of the Committee on Military Affairs, in a formal speech expounding the various provisions of the Act. There is every reason to believe that Senator Sheppard's speech had behind it the authority of those who framed this legislation and who were cognizant of the prior legislation upon which they were building. Senator Sheppard stated that § 11 "contains the penalty provisions of the bill, which are substantially the same as those of the World War act. Experience with the World War provisions shows that they worked satisfactorily in providing the necessary protection." 86 Cong. Rec. 10095. It is to be noted that Senator Sheppard spoke of the "World War provisions" and thereby evidently had in mind the various enactments available for dealing with interferences with the raising of an army.

In its arsenal of punishment the Government had provisions dealing specifically with conspiracies affecting the recruiting of an army as well as the all-comprehending conspiracy statute outlawing conspiracies to commit any offense against the United States—an old enactment known to every tyro of federal law since Reconstruction days (R. S. § 5440, Act of March 2, 1867). What then

were the specific conspiracy provisions which were "substantially" drawn upon for this war from the legislation of the First World War? (a) Section 6 of the Criminal Code, 18 U. S. C. § 6, punished conspiracies "by force to prevent, hinder, or delay the execution of any law of the United States . . ." with a fine of $5,000 or imprisonment for six years or both. No overt act was required for prosecution for this conspiracy. (b) Section 4 of the Espionage Act, 40 Stat. 217, 219, 50 U. S. C. § 34, outlawed conspiracies to violate §§ 2 and 3 of the Espionage Act, to be punished by a fine of $10,000, imprisonment for twenty years or both. Section 4 required an overt act. This section survived the last war but was not, however, operative when the Selective Service Act was enacted because it applies only "when the United States is at war."

If the conspiracy clause in § 11 is confined to offenses involving force or violence, the provisions as to conspiracy remain substantially the same under the 1940 Act as they were during the last war. Conspiracies to commit non-violent offenses—that is, conspiracies to commit the range of substantive offenses, some of them rather minor in character, contained in § 11—are of course still punishable under the general conspiracy provision, to wit § 37 of the Criminal Code, as was the situation during the last war. Offenses of violence which fell within § 6 of the Criminal Code in 1917 are now included within § 11, neither of which requires an overt act. The punishment for these conspiracies of violence is substantially similar— a $5,000 fine and six years imprisonment under § 6 and a $10,000 fine and five years imprisonment under § 11. Senator Sheppard's desire for penalties "which are substantially the same as . . . the World War provisions" would thus appear to be accomplished.

But the Government urges that if § 11 of the 1940 Act merely hits a conspiracy to do an act of violence, the

conspiracy clause will be redundant in that it will accomplish nothing except to increase the limit of the fine from $5,000 to $10,000 and to decrease the allowable imprisonment from six years to five years. This argument wholly overlooks two important changes effected by the conspiracy provision of the 1940 Act. The cases had raised doubt whether § 6 of the Criminal Code was properly applicable to conspiracies to violate by force the Draft Act. Compare *Reeder* v. *United States,* 262 F. 36, cert. denied, 252 U. S. 581, with *Haywood* v. *United States,* 268 F. 795, 799, cert. denied, 256 U. S. 689. By specific inclusion of a conspiracy provision in the Selective Service Act, instead of leaving it to the generality of § 6 of the Criminal Code, the doubt was completely eliminated. That in itself saves the conspiracy provision from mere redundancy, for it gives it, as a matter of law enforcement, an important function.

The Government also fails to take into account that the conspiracy provision of § 11 added considerably to the scope of § 6—that the net of § 11 would catch many offenders left free by § 6 of the Criminal Code. The latter merely reaches conspiracies to obstruct by force the operation of "any law of the United States." For more than half a century, ever since *United States* v. *Eaton,* 144 U. S. 677, it has been the settled principle of federal criminal law that a provision merely punishing violation of a "law" does not cover violations of rules or regulations made in conformity with that law. See *United States* v. *Grimaud,* 220 U. S. 506, 518–519. Section 6, therefore, does not cover violations of rules or regulations. Section 11 of the 1940 Act made an important addition in that it punishes conspiracies to interfere forcibly not merely "with the administration of this Act" but also with "the rules or regulations made pursuant thereto."

*United States* v. *Eaton* is not a judicial sport. It is the application of a principle which has been undeviatingly

applied by this Court—most recently in *Viereck* v. *United States,* 318 U. S. 236, 241—and upon the basis of which Congress legislates. *In re Kollock,* 165 U. S. 526; *United States* v. *Grimaud, supra; United States* v. *George,* 228 U. S. 14. The principle is that a crime is defined by Congress, not by an executive agency. See *United States* v. *Smull,* 236 U. S. 405, 409. "Where the charge is of crime, it must have clear legislative basis." *United States* v. *George, supra,* at 22. It is only when Congress in advance prescribes criminal sanctions for violations of authorized rules that violations of such rules can be punished as crimes. It is this far-reaching distinction which, it was pointed out in the *Grimaud* case, put on one side the doctrine of the *Eaton* case, where violation of rules and regulations was not made criminal, and on the other side legislation such as that enforced in the *Grimaud* case where Congress specifically provided that *"any violation of the provisions of this act or such rules and regulations* [of the Secretary of Agriculture] *shall be punished."* (Italics added by Mr. Justice Lamar.) *United States* v. *Grimaud, supra,* at 515. Congress consciously gave an effect to the conspiracy clause of § 11 which is absent from that of § 6 of the Criminal Code.

There is another strong ground for concluding that the draftsmen of the Selective Service Act did not intend by its dubious language to extend the conspiracy provision beyond violent attempts and to sweep into this clause all conspiracies to violate the Act or any of its regulations. Whenever Congress desires to make a conspiracy provision apply to a whole series of substantive offenses, it does so explicitly. Either the conspiracy provision is set off in a separate section or subsection made applicable to all preceding sections, or else clear words of reference to "any provision" or "any of the acts made unlawful" are employed. See National Stolen Property Act, § 7, 53 Stat. 1178, 1179, 18 U. S. C. § 418a; Farm Credit Act, § 64 (f),

48 Stat. 257, 269, 12 U. S. C. § 1138 (f); Sherman Act, §§ 1–3, 26 Stat. 209, as amended, 15 U. S. C. §§ 1–3; Act of July 31, 1861, R. S. § 1980, 8 U. S. C. § 47. The absence of such explicitness in the Selective Service Act is a strong indication that no such sweeping scope was intended.

A statute defining specific crimes presents to courts a very different duty of construction than do regulatory enactments wherein Congress recites a broad policy in light of which the specific provisions of the regulatory scheme must be construed. In the latter situation, a particular provision of a statute derives meaning from the broad policy expressed. See *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194. In a criminal statute like the one now under review language defining the crime is self-contained—there is no background of broad policy to guide the duty of giving such language its easy, most natural meaning.

In the past, decisions undoubtedly worked hard to narrow the scope of a criminal statute. It is against the whole tenor of reading a criminal statute to work hard to give it the broadest possible scope. The responsibility of Congress for manifesting its will is ill served by easy-going judicial construction of criminal statutes.

These views call for reversal of the judgment.

MR. JUSTICE ROBERTS, MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE join in this dissent.