**UNITED STATES v. GRUNENWALD et al.**

Nos. 12215–12220, 12222, 12224, 12236, 12238–12241, Criminal.

District Court, W. D. Pennsylvania.

May 28, 1946

George Mashank, U. S. Atty., of Sharon, Pa., for plaintiff.

James F. Callahan, James P. McArdle, and John B. Nicklas, Jr., of McCrady, Nicklas & Hirschfield, all of Pittsburgh, Pa., for defendants.

WALLACE S. ·GOURLEY, District Judge.

In connection with the above entitled criminal indictments, motions to quash each of said indictments have been filed by the defendants involved in said proceedings, in which it is claimed as follows:

1. Said indictments do not set forth an indictable offense.

2. Said indictments are based entirely on intendiments, inuendos and conclusions.

3. Said indictments are vague and indefinite.

4. Said indictments do not state in what particular way the Act of Congress, Second War Powers Act of 1942, 50 U.S.C.A. Appendix, § 631 et seq., and the ration rules and regulations in force and effect, issued in support of said Act, have been violated.

5. Said indictments do not set forth or show a violation of the particular sections of the general ration orders which have been violated.

6. The regulations and ration orders referred to in the indictments, and which were promulgated by the Administrator, are an attempt to transfer to the executive branch of the Government essential legislative functions which are vested in the Congress of the United States and are, therefore, unconstitutional.

7. The President of the United States had no authority or power to delegate the rationing powers under subsection No. 8 of the War Powers Act to the Administrator of Price Control through the Chairman of the War Production Board rather than delegate that power direct as provided by congressional mandate.

8. Under the provisions of the Second War Powers Act of 1942, an indictment cannot be sustained under said Act for the reason that no reference is made to food stuffs or the rationing thereof, and the commodity "sugar" is not included in the words "materials" or "essential materials".

It is agreed by counsel representing the defendants at the time of argument that Count I of Indictment No. 12215 and Indictment Nos. 12220 and 12222 have been properly laid and returned in accordance with the provisions of 18 U.S.C.A. § 101. The Court, therefore, has for consideration the legal sufficiency of Count II of Indictment No. 12215 and Indictment Nos. 12216, 12217, 12218, 12219, 12224, 12236, 12238, 12239, 12240 and 12241, and as to whether or not said indictments should be dismissed as contended by the defend-

ants in the motions which have been filed to quash each of said indictments.

It is, in substance, the contention of the defendants that no directive rule, regulation or order of any governmental agency has the effect of law, or that any person offending against any such rule or regulation may be legally indicted unless said rule or regulation is supported by an Act of Congress. It has been earnestly argued to the Court by counsel for the defendants that the offenses set forth in the indictments are not violations of the Second War Powers Act of 1942 and its amendments. That there is no mention in said Act or any reference made to commodities, food stuffs or provisions, and, as a result thereof, since reference is made only to materials, the commodity "sugar" could not be legally construed under any sense of imagination to be termed as "material."

It is further contended by the defendants that subsection (a) (8) of the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 633(8), provides as follows:

"The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe."

And thereafter by Executive Order No. 9125, dated April 7, 1942, the President directed the chairman of the War Production Board to delegate to the Office of Price Administration or the Price Administrator such of his functions, duties, powers, authority or discretion with respect to priorities or the rationing of commodities as he may deem necessary or appropriate for the effective prosecution of the war and by said Executive Order, the Price Administrator was authorized to exercise all functions, duties and powers with respect to such priorities or rationing in the same manner and to the same degree and extent as if said functions, duties, powers, authority or discretion had been conferred upon or transferred to the Office of Price Administration directly by Executive Order rather than through the chairman of the War Production Board.

Paragraph No. 3 of Executive Order No. 9125 provides as follows:

"The chairman of the War Production Board is authorized to delegate to the Office of Price Administration or the Price Administrator such of his functions, duties, powers, authority, or discretion with respect to priorities or rationing, as he may deem to be necessary or appropriate for the effective prosecution of the war; and in the administration or enforcement of any such priorities or rationing authority * * * heretofore conferred upon the Office of Price Administration or upon the Price Administrator by the Office of Production Management or by the Chairman of the War Production Board, the Price Administrator is hereby authorized:

"(a) To exercise all functions, duties, powers, authority or discretion with respect to such priorities or rationing in the same manner, and to the same degree and extent, as if such functions, duties, powers, authority or discretion had been conferred upon or transferred to the Office of Price Administration directly by Executive order. * * *

It is, therefore, first necessary for the Court to consider as to whether or not Congress acted within the constitutional bounds when it delegated the power to define crimes and fix penalties for crimes as provided in the Second War Powers Act, and if the Chairman of the War Production Board had authority to delegate the powers conferred upon him to the Administrator of the Office of Price Administration.

In the case of United States v. Randall et al., 2 Cir., reported in 140 F.2d 70, it is provided as follows:

"Subsection (a) (2) of section 2 of Act June 28, 1940, as amended by Second War Powers Act of 1942, § 301, section 633, 50 U.S.C.A.Appendix, provides that whenever the President 'is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense * * *', he may allocate such material or facilities in such manner as 'he shall deem necessary or appropriate in the public interest and to promote the national defense.' Other provi-

sions authorize the President to obtain such information, require such reports and make such investigations as he may in his discretion think necessary or appropriate to the enforcement or administration of the subsection and to exercise his powers and discretion through subordinates. He did so through the Office of Price Administration."

I, therefore, believe that the provisions of Section 2(a) (5) of Title 3 of the Second War Powers Act of 1942 are broad enough to include the delegation of authority to the Price Administrator to prohibit the counterfeiting of ration documents, or their acquisition, possession and control in connection with the commodity "sugar." United States v. Angelo, 3 Cir., 153 F.2d 247; United States v. Randall, 2 Cir., 140 F.2d 70; Randall v. United States, 5 Cir., 148 F.2d 234.

I also believe that under the provisions of Title 3 of the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 633, the President of the United States had authority to delegate to the Chairman of the War Production Board to allocate materials found vital to the successful prosecution of the war effort, and that the President furthermore had the authority to authorize and empower the Chairman of the War Production Board to delegate certain authority to the Administrator of the Office of Price Administration.

It is a well known principle of law that the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of Government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character, because the violation thereof is punished as a public offense. If a person violates such a regulation, the offense is not against the person who promulgated the same, but it is against the United States. Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 36 L.Ed. 294.

In our democratic form of government, it was practicable for Congress to provide general regulations which would have application to every commodity or material which it might be deemed necessary to regulate in order to bring about a successful prosecution of the war effort. As a result of which, it was absolutely necessary for Congress to delegate authority generally to the President to regulate such commodities or materials as, in his judgment, he believed necessary. With the many responsibilities which the President had in contributing to the successful prosecution of the war effort, it would appear highly technical and beyond reason to hold that the President of the United States did not have authority to authorize the Chairman of the War Production Board to empower the Administrator of the Office of Price Administration to promulgate such rules and regulations as in the judgment of the Administrator were deemed advisable or expedient. United States v. Grimaud, 220 U.S. 506, 516, 31 S.Ct. 480, 55 L.Ed. 563.

Argument has also been made by counsel for the defendants that the indictments are vague, indefinite and do not set forth the ration rules and regulations in force and effect.

The Court has given considerable consideration and attention to the case of M. Kraus & Bros., Inc., v. United States of America, 66 S.Ct. 705, and there is no question but what the rule of law is sound which provides that the Administrator's regulations or provisions must be explicit and unambiguous in order to sustain a criminal prosecution. Furthermore, the courts must take care not to construe a regulation or order so strictly as to defeat the obvious intention of the Administrator.

Furthermore, the principle of strict construction does not require that a criminal statute or a regulation be given narrowest possible meaning. Singer et al. v. United States, 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285. It has been further held in the case of Yakus v. United States, 321

U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, that no principle of law or provision of the Constitution precludes Congress from making criminal the violation of an administrative regulation.

It has been argued by counsel for the defendants that no mention is made in the War Powers Act of food stuffs or rationing, and by inference sugar is not a material such as would be governed by said Act, and that it is only used in connection with food stuffs or articles used for human consumption.

■ The Court will take judicial knowledge of the fact that sugar has many uses other than for food purposes; in its raw material form it could be held similar to grain or agricultural commodities which are used for the manufacture of many materials which were found vital to the successful prosecution of the war effort. Sugar was vitally needed to produce industrial alcohol which enters directly or indirectly into the manufacture of gases, pharmaceutical supplies, medicines, chemical warfare equipment, varnishes, paints, artificial leather, anti-freeze solution, explosives, moving picture films, inks, tobacco, lacquer, anesthetics, antiseptics, synthetic rubber products, and many other products which, beyond question, were vital to the war effort.

Material is generally defined as any substance or matter of which anything is made or may be made. 39 Corpus Juris, 1385.

■ There remains, therefore, no question in my mind but what sugar was such a material that would fall within the word "material" in the War Powers Act. The fact that sugar was also used as a food and in the preparation of food stuffs would not in any sense of the word remove the interpretation of the use of sugar as a material in industry for the production of goods or warfare supplies and equipment.

Executive orders and legislation during a national emergency and in time of war must be expressed in broad terms and generalities, and in the interpretation of such legislation, the Court must not hunt for limitations nor scrutinize the wording with confining intent, but should seek for the purpose and spirit of the enactment. I,

therefore, believe that the Administrator of the Office of Price Administration had power to ration sugar by virtue of the Second War Powers Act of 1942 since it was a material of vital importance. That in addition thereto, authority existed to prescribe by general orders or regulations criminal penalties for violation of regulations promulgated in connection therewith.

■ In connection with the legal sufficiency of the indictments in which it is contended that vagueness and indefiniteness exist as to the violation or violations complained of, the test of the indictments is whether they sufficiently charge the defendants with an offense so that they can know with what they are charged, and whether it is sufficiently specific so that conviction will bar a second prosecution for the same offense. Dowling Bros. Distilling Co. et al. v. United States, 6 Cir., 153 F.2d 353.

■ In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial. The District Attorney may have conceived the charge under one statute which would not sustain the indictment but it may nevertheless come within the terms of another statute. United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788; Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509; United States v. Kolodny, 2 Cir., 149 F.2d 210.

In connection with all of the indictments, I believe that the charges are laid out with sufficient definiteness for each of the defendants to know the offenses for which he stands charged and against which he must defend.

■ If any of the defendants do not have enough information or understanding in order to prepare their defense, they could avail themselves of a Bill of Particulars but the defendants are not entitled to a Bill of Particulars as to the specific wording of the regulations involved since a Bill of Particulars is to secure facts not legal theories. Kampe v. United States, 8 Cir., 151 F.2d 680; Rose v. United States, 9 Cir., 149 F.2d 755.

Each of the motions to quash the indictments in connection with all of the above cases is, therefore, refused.

In addition to the above matters and in connection with the form indictment returned against James Vellis, Criminal Action Nos. 12217 and 12236, it is contended by counsel for said defendant that said indictment does not set forth facts which would prove James Vellis to be a party to the whole of said conspiracy set forth in said indictment. I do not believe this position to be well maintained since a single conspiracy may embrace several crimes, and the commission of an overt act in the furtherance of any one or more of the several crimes will suffice. United States v. Todaro, 2 Cir., 145 F.2d 977.

The motion of the defendant to quash said indictment, and any similar indictments against any of the defendants involved in the matter before the Court, for the reason just given is refused.