**UNITED STATES v. GUIDO et al.**

No. 9124.

Circuit Court of Appeals, Third Circuit.

Argued Sept. 30, 1946.

Reargued Jan. 6, 1947.

Decided April 28, 1947.

Joseph Ominsky, of Philadelphia, Pa., for appellants.

Nicholas M. Giordano, Jr., of Trenton, N. J., for appellant Ralph T. Guido.

Sido L. Ridolfi, of Trenton, N. J., for appellant Alfred P. Sanna.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., by Grover C. Richman, Jr., Asst. U. S. Atty., of Camden, N. J., for appellee.

Before BIGGS, McLAUGHLIN, and KALODNER, Circuit Judges.

BIGGS, Circuit Judge.

The appellants, Ralph T. Guido and Alfred P. Sanna, were each convicted on four counts of an indictment respectively charging them with violation of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, §§ 301–318, with a conspiracy to violate that Act, with violation of the Espionage Act of 1917, 50 U.S.C.A. §§ 31–42, and with a conspiracy to violate that Act. Both Guido and Sanna were sentenced to a term of imprisonment on each count, the respective sentences to run concurrently.

Guido, Sanna, and others were accused of aiding another defendant, Frank B. Guido, Guido's son, to procure a discharge on the ground that he was unfit for service be reason of psychoneurosis when in fact he was not, and of conspiring to do this. Guido, Sanna, and the other defendants were accused also of causing the defendant Frank B. Guido to be disloyal to the United States and to refuse duty in the United States Army by fraudulently procuring a discharge on the ground that he was psychoneurotic.

The appellants have alleged various gorunds for reversal, two of which, relating to the sufficiency of the indictment, must be disposed of *in limine.*

The first necessitates a decision as to whether or not the first two counts of the indictment allege violations of Section 11 of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 311. The second requires determination of whether the third count of the indictment alleges a violation of Section 3 of the Espionage Act of 1917, 50 U.S.C.A. § 33, and whether the fourth count alleges a violation of Section 4 of that Act, 50 U.S.C.A. § 34.

As to the first point the appellants contend that because Frank B. Guido had been inducted into the Army of the United States prior to the consummation of the substantive offense or the committing of any overt act, he, therefore, was not subject to the provisions of the Selective Training and Service Act. It follows, say the appellants, that Frank B. Guido could not be tried legally before a civil court as distinguished from a military tribunal; that since he might not be so tried, they may not be.

The fallacies inherent in this argument are apparent immediately. At the time the indictment was returned Frank B. Guido had been discharged from the United States Army. If he procured his discharge by fraud, as the jury in the instant case found that he did, the discharge perhaps could have been cancelled or vacated as provided in the Manual for Courts-Martial and he would have been subject to military law. See paragraph 10, p. 8 of the Manual for Courts-Martial, U. S. Army, and Article 2 of the Articles of War, 10 U.S.C.A. § 1473. Cf. United States ex rel. Flannery v. Commanding General, D.C., S.D.N.Y., 69 F.Supp. 661. But in any event it is clear that the allegations of counts 1 and 2 of the indictment, respectively charging the appellants with fraudulently aiding Frank B. Guido and conspiring to procure his discharge as a psychoneurotic, state an offense defined and created by Section 11 of the Selective Training and Service Act, a civil offense cognizable in a district court of the United States. While it is true that Frank B. Guido, had his discharge been validly cancelled or revoked, might have been tried before a court martial, for the military equivalent of the offenses charged in counts 1 and 2 of the indictment, the court below also possessed jurisdiction to try him therefor. Frank B. Guido had no right, constitutional or otherwise, to be tried by a court martial. *A fortiori,* the appellants, never within the jurisdiction of a military tribunal, who aided Frank B. Guido and conspired with him to enable him to avoid military service, could legally be tried before a district court of the United States. See Coleman v. State of Tennessee, 97 U.S. 509, 24 L.Ed. 1118; United States v. Canella, D.C. S.D.Cal., 63 F.Supp. 377, 381–384, and the authorities cited therein.

The language of Section 11 authorizing persons subject to military or naval law to be tried by court martial[1] is carefully lim-

---

[1] Section 11 provides in part: "[A person] * * * if subject to military or naval law may be tried by court martial, and, on conviction, shall suffer such punishment as a court martial may direct. No person shall be tried by any military

ited as appears from that portion of the statute set out in the footnote. Congress did not see fit to curtail or limit the power of the district courts of the United States to try offenders under Section 11, but on the contrary, as appears from the language of the section, expressly conferred jurisdiction to try such offenses on the district courts of the United States.

■ As to the appellants' assertion that the sections of the Espionage Act of 1917, hereinbefore referred to, are not applicable to them little need be said. The acts alleged in the indictment are within the purview of Section 3 of that Act. It is alleged respectively in counts 3 and 4 of the indictment that the appellants wilfully caused and attempted to cause disloyalty and refusal of duty in the military forces of the United States by aiding Guido to fraudulently procure a discharge as a psychoneurotic, and conspired with him to effect such a result. The appellants contend, however, that the statute "is really one prohibiting sedition during wartime." We are unable to perceive the advantage of this argument to the appellants. Causing a soldier in the United States Army to procure a fraudulent discharge in war time is to cause him to be disloyal and to refuse duty. Such acts are seditious as is a conspiracy to commit them. Cf. United States v. Krafft, 3 Cir., 249 F. 919, L.R.A.1918F, 402.

We conclude that the four counts of the indictment allege crimes within the purview of the respective Acts discussed in this opinion. So much for the sufficiency of the indictment.

■ Other grounds of alleged error, however, require reversal of the judgments of conviction. We will deal first with the attempts of the appellee to prove the conspiracies alleged in counts 2 and 4 of the indictment. Frank B. Guido was discharged on January 29, 1943. The object of the conspiracy therefore was consummated on January 29, 1943 and it is the contention of the appellants that the conspiracy came to an end upon that day at the time that Frank B. Guido actually received his discharge papers. The appellee contends that the conspiracy did not come to an end until the occurrence of the latest overt act charged in the indictment. There is evidence from which the jury could have found that one day after January 29, viz., on January 30, 1943, Sanna paid, or caused to be paid $100 to McAfee as a reward for his services in furthering the object of the conspiracy. McAfee was the sergeant who, it is alleged, coached Frank B. Guido in the symptoms of conversion hysteria. The payment of the money by Sanna to McAfee is alleged as overt act 6 in the indictment. In our view, however, it is unnecessary to determine precisely when the conspiracy came to an end in order to reach the real vice of the proceedings which lay in the admission of certain evidence given by Barbara G. Evans and Mary Lou Evans, waitresses at the Outpost Restaurant, and by Alphonso Bello, the cook at the restaurant.

The pertinent facts in respect to this aspect of the case are as follows. Sometime in the afternoon or early evening of January 29 or January 30, 1943, but soon after his discharge, Frank B. Guido came to the Outpost Restaurant and engaged in conversation with the persons named. Frank B. Guido had just received his discharge papers and he displayed them with joy. According to the evidence he was asked how he was able to procure his discharge and he replied that he had gotten out of the army "by acting crazy" and made several remarks of similar tenor. This evidence, if believed by the jury, constituted a confession or admissions by Frank B. Guido from which his guilt could have been found or inferred by the jury. Whether the conspiracy, alleged in count 4 of the indictment, based on the Espionage Act of 1917 came to an end on January 29 or January 30, 1943, and whether the conspiracy alleged in count 2, based on the Selective Training and Service Act,[2] was a completed

---

or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act * * *."

[2] See Singer v. United States, 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285, affirming United States v. Singer, 3 Cir., 141 F.2d

262, holding that the offense of conspiracy under Section 11 of the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 311, unlike that under Section 37 of the Criminal Code, 18 U.S. C.A. § 88, does not require an overt act to constitute the offense of conspiracy.

offense at a much earlier date by the simple agreement of the parties to the conspiracy to procure Frank B. Guido's release from the army, need not be decided for it is clear that the statements made by Frank B. Guido on January 30, 1943 were not in furtherance of the conspiracy. It follows that under the decision of the Supreme Court in Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, these statements of Frank B. Guido were not admissible in evidence against the appellants.

The court below charged that if the jury found that the conspiracy was in existence at the time of the admissions alleged to have been made by Frank B. Guido to the waitresses and to the cook, the statements were admissible against all the defendants, including the appellants, who had been proved to have participated in the conspiracy. The pertinent portion of the charge [3] is set out in the footnote. Under the ruling in the Fiswick case this part of the charge was erroneous. The learned Judge should have charged that since the admissions or confessions alleged to have been made by Frank B. Guido were not in furtherance of the conspiracy, it was immaterial whether or not the conspiracy was still in existence, had been consummated, or had terminated and that the evidence given by the waitresses and the cook was admissible only as to Frank B. Guido.

█ As to the substantive offenses charged in counts 1 and 3 of the indictment, it is clear that the confession or admissions made by Frank B. Guido to the waitresses and to the cook, respecting the means whereby he had procured his discharge, were inadmissible as to the appellants for there is no proof, nor is it contended by the appellee, that the appellants were present at the Outpost Restaurant when the statements were made. The statements, therefore, were admissible only to prove the guilt of Frank B. Guido.

The admission of Frank B. Guido's statements in evidence against the appellants was prejudicial error. Consequently, the judgments of conviction will be reversed.

---

[3] As follows:

"I point to your recollection objections that were made to witnesses testifying about statements that were made by defendants not in the presence of other defendants and particularly I charge you that where you are considering whether the government has sustained its burden of proving conspiracy that you must first be convinced that there was a conspiracy, that there was an unlawful agreement, before you can give heed to any statements made by one of the alleged conspirators out of the presence of the other alleged conspirators.

"If you are not convinced of the agreement then you must not permit statements made by one person concerning matters that were testified to not in the presence of another defendant, you must not pay attention to that testimony, you must cast it out, but once you are convinced beyond a reasonable doubt that there was an unlawful conspiracy and that certain of the defendants were encompassed therein then as against all the defendants who are encompassed in that conspiracy or agreement the testimony of one defendant may be taken against all defendants."