UNITED STATES of America, Appellee,

v.

Gabriel BEY, Appellant.

No. 83–1775.

United States Court of Appeals,
Third Circuit.

Argued April 24, 1984.
Decided June 11, 1984.

Edward H. Weis (argued), Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, John F. Sutphen (argued), Sp. Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and BECKER, Circuit Judges, and SAROKIN, District Judge.[*]

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from convictions under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Controlled Substances Act), 21 U.S.C. §§ 841(a)(1), 846 (1982), and the federal aiding and abetting statute, 18 U.S.C. § 2 (1982). Two primary issues are presented. First, we must consider whether the district court erred as a matter of law in refusing to charge the jury that § 846 requires proof of an overt act to sustain a conviction for conspiracy to distribute heroin. Second, we must determine whether the district court committed plain error in its instruction to the jury on the charge of aiding and abetting. We hold that the district court did not err in

either regard, and thus we will affirm the convictions.

### I.

In May 1982, Earl Wilson, an informant for the Philadelphia Task Force of the Drug Enforcement Administration, introduced undercover police officer Kenneth Lamar to Elijah Harris, a suspected heroin dealer, so that Lamar could purchase heroin through Harris. After several phone calls to his "source," Harris requested and received payment from Lamar. Harris then accompanied Wilson and Lamar to a house on Mt. Vernon Street in Philadelphia. While Wilson and Lamar remained outside, Harris went up to the house where a man, later identified as Gabriel Bey, the appellant here, was standing in the doorway. Harris and Bey conferred and then entered the house. A few minutes later Harris came out with five bundles of heroin which he gave to Lamar.

The next month, Lamar and Wilson returned to the Mt. Vernon Street house to obtain more heroin. Bey answered the door and explained that he had no heroin in the house, but could get some. He and Wilson then drove, in Bey's automobile, to a bar. Bey went into the bar and returned with a brown paper bag. Bey and Wilson drove back to the house where Lamar was parked, and, in Lamar's car, exchanged 10 bundles of heroin for $400. Bey wrote his telephone number on a card, and then handed the card to Lamar.

In February 1983, Wilson and Lamar went to the Mt. Vernon Street house where they again met Bey, who invited them inside. There, Lamar purchased 17 bundles of heroin from Bey for $300. Three months later, Bey and Harris were arrested.

■ The government returned a five-count indictment charging Harris and Bey variously with distribution of heroin, conspiracy to distribute heroin, and aiding and

[*] Honorable H. Lee Sarokin, United States District Court for the District of New Jersey, sitting by designation.

abetting the distribution of heroin.[1] After a two-day trial, a jury found both Harris and Bey guilty of all counts. Bey was sentenced to concurrent five-year terms of imprisonment for counts I, IV, and V, as well as concurrent five-year special parole terms for counts III, IV, and V. Bey filed a timely notice of appeal.[2]

## II

The first question is whether the Controlled Substances Act, 21 U.S.C. § 846 (1982), requires proof of an overt act in furtherance of the conspiracy. Section 846 provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment and fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846 (1982).

Of the courts of appeals that have considered the question of proof of an overt act under § 846, only two, the Sixth and, Eighth, require such proof. *See U.S. v. Meyers,* 646 F.2d 1142 (6th Cir.1981); *U.S. v. Hutchinson,* 488 F.2d 484 (8th Cir.1973), *cert. denied sub nom.; Ennis v. U.S.,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). The other courts of appeals that have addressed the issue do not require proof of an overt act. *See U.S. v. Russell,* 703 F.2d 1243 (11th Cir.1983); *U.S. v. Michelena-Orovio,* 702 F.2d 496 (5th Cir. 1983); *U.S. v. Umentum,* 547 F.2d 987, 990 (7th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *U.S. v. Bermudez,* 526 F.2d 89, 94 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976); *U.S. v. DeJesus,* 520 F.2d 298 (1st Cir.1975); *U.S. v. Murray,* 492 F.2d 178 (9th Cir.1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974). On three occasions, this Court has assumed without explicit analysis that § 846 dispenses with the overt act requirement. *U.S. v. Nolan,* 718 F.2d 589, 595 (3d Cir.1983); *U.S. v. Everett,* 700 F.2d 900, 907 n. 15 (3d Cir.1983); *U.S. v. Dreyer,* 533 F.2d 112, 117 n. 6 (3d Cir.1976).

Appellant urges that we formally adopt the minority view and read into § 846 the requirement that an overt act is an essential element of a drug conspiracy. We take this opportunity to reexamine our earlier position.

The starting point for interpreting a statute must be the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, the statutory language must be regarded as conclusive. *Consumer Prod. Safety Comm'n v. GTE Sylvania,* 447. U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1979). Unlike the general federal conspiracy statute, 18 U.S.C. § 371,[3] which was first enacted in 1867, the conspiracy provi-

---

**1.** Count I charged Bey and Harris with conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (1982). Count II charged Harris with distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (1982). Count III charged Bey with aiding and abetting the distribution of heroin by Harris in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (1982). Counts IV and V charged Bey with distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (1982).

**2.** The appellant requests that this Court refrain from invoking the concurrent sentence doctrine to avoid reaching the substantive issues. Under the concurrent sentence doctrine, an appellate court, in its discretion, may avoid resolution of legal issues affecting less than all the counts in an indictment where at least one count has been upheld and the sentences are concurrent. *U.S. v. Lampley,* 573 F.2d 783 (3d Cir.1978). Be-

cause we have carefully considered the legal issues raised by the appellant, there is no need to apply the concurrent sentence doctrine in this appeal.

**3.** 18 U.S.C. § 371 (1982) provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

sion of 21 U.S.C. § 846, does not specify proof of an overt act as a precondition to conviction. The section of the Controlled Substances Act in question in this appeal was first enacted by Congress in 1951 as an amendment to the Narcotics Drugs Import and Export Act,[4] the precursor of the current Controlled Substances Act. The 1951 amendment made conspiracies to violate substantive provisions of the narcotics law "specific offenses" with separate penalties. S.Rep. No. 1051, 81st Cong., 1st Sess., *reprinted in* 1951 U.S.Code Cong. & Ad.News 2602.

■ Nothing in the legislative history of either the 1951 amendment or the current Controlled Substances Act discloses an intention on the part of Congress to impose an additional requirement on the drug conspiracy provision thus making it similar to 18 U.S.C. § 371. Nor has Congress altered the language of the conspiracy provision in any material way since 1951. As the Supreme Court noted in *Albernaz v. U.S.*, 450 U.S. 333, 341, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981), "Congress is predominantly a lawyer's body ... and it is appropriate for us 'to assume that our elected representatives ... know the law.'" Thus if anything may be assumed from the absence of an express statutory requirement of an overt act, it is that Congress was aware of the general federal conspiracy statute and chose to enact a different type of conspiracy provision specifically for narcotics control.

Having determined that Congress did not intend to require proof of an overt act in these circumstances, we must next consider whether an overt act in furtherance of a drug conspiracy is required by the Constitution. The Supreme Court has indicated that it regards the function of the overt act in a conspiracy prosecution not as a constitutional requirement, but simply as a manifestation that the conspiracy is underway. *See Yates v. U.S.*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1956).

In *Nash v. U.S.*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913), an antitrust case, the Court upheld an indictment for conspiracy under the Sherman Act, in spite of the fact that no overt act was alleged by the government. Justice Holmes observed that "the Sherman Act punishes the conspiracies at which it is aimed on a common law footing—that is to say, it does not make the doing of any act other than the act of conspiring a condition of liability." *Id.* at 378, 33 S.Ct. at 782. In *Singer v. U.S.*, 323 U.S. 338, 340, 65 S.Ct. 282, 283, 89 L.Ed. 285 (1945), (quoting *Nash, supra*, 229 U.S. at 378, 33 S.Ct. at 782), the Court similarly construed the conspiracy section of the Selective Training and Service Act as not "requir[ing] an overt act for the offense of conspiracy."[5]

Thus, there is no constitutional need for an overt act in furtherance of the conspiracy; the overt act is mandatory only when required by statute, usually for evidentiary or jurisdictional purposes. *See U.S. v. Wander*, 601 F.2d 1251, 1259 (3d Cir.1979); *U.S. v. Trowery*, 542 F.2d 623, 626 (3d Cir.1976).[6] In *Hyde v. U.S.*, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912), for example, the Court construed the overt

---

**4.** Section 2557(b)(1) of the Internal Revenue Code was amended to read:

> Whoever commits an offense or conspires to commit an offense described in this subchapter, subchapter C of this chapter, or parts V or VI of subchapter A of chapter 27, for which no specific penalty is otherwise provided, shall be fined not more than $2,000 and imprisoned not less than two or more than five years.

26 U.S.C. § 2557(b)(1) (1952).

**5.** At common law, the only act required for a conspiracy is the act of entering into an agreement. *Hogan v. O'Neill*, 255 U.S. 52, 55, 41 S.Ct.

222, 223, 65 L.Ed. 497 (1920). The essence of the conspiracy is the criminal combination which has been formed as a result of the agreement. *U.S. v. Kissel*, 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168 (1910). Although some overt act in furtherance of the conspiracy frequently is required by statute, the emphasis of the common law crime has always been the shared design or "confederacy to injure individuals, or to do acts which are unlawful, or prejudicial to the community." 4 Blackstone's Commentaries 136 n. 44 (W. Lewis ed. 1897).

**6.** Insofar as the overt act requirement has served as a mechanism to corroborate the exist-

act requirement of a statute as an element of the crime of conspiracy for purposes of finding venue. Justice Holmes, dissenting, vigorously argued that the overt act was "no more a part of the crime than it was at common law," but was "simply evidence that the conspiracy has passed beyond words and is on foot when the act is done." 225 U.S. at 388, 32 S.Ct. at 810. He agreed with the view expressed in *U.S. v. Britton,* 108 U.S. 199, 204, 2 S.Ct. 531, 534, 27 L.Ed. 698 (1883), that the statutory requirement of an act did not add another element to the crime, but "merely afford[ed] a *locus penitentiae.*" *See also Braverman v. U.S.,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942) (overt act, if required by statute, may be part of crime itself, or method of corroborating existence of conspiracy, or device for determining *locus penitentiae* )

Because we are unable to identify either a statutory or constitutional requirement that an overt act must be alleged and proven to sustain a conspiracy conviction under the Controlled Substance Act, we hold that the district court's instructions to the jury on the conspiracy charge were not erroneous as a matter of law.

### III

█ Bey next claims that the Court's instructions to the jury on the charge of aiding and abetting under 18 U.S.C. § 2 (1982) were insufficient.[7] He concedes, however, that his counsel did not object at trial to the instruction and therefore that this Court may review it only for plain error. *See U.S. v. Provenzano,* 334 F.2d 678, 689–90 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964).

Under the plain error standard, an appellate court is concerned only with errors that seriously affect substantial rights or compromise the fairness of the proceedings. Fed.R.Crim.P. 52(b). The power to notice plain error must be exercised cautiously. 3A C. Wright & A. Miller, Federal Practice and Procedure § 856 (1982).

> The trial court charged the jury that one who knowingly and intentionally aides (sic), abets or counsels an unlawful act [is] subject to liability for that act, the same as if he were the person who committed the act or did the act or the principal person involved.

Bey argues that the instruction fails to indicate that aiding and abetting must be done willfully, with the specific intent to bring about the crime charged in the indictment, that is, the distribution of heroin. At oral argument the government conceded that the judge did not use the word "willfully" in the instruction, but contended that the words "knowingly" and "intentionally" were substantially equivalent and, therefore, the instruction was not plainly erroneous.

█ To support a conviction on a charge of aiding and abetting another to commit a crime, the prosecution must show that the defendant "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." *Nye & Nissen v. U.S.,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949) (quoting *U.S. v. Peoni,* 100 F.2d 401, 402 (2d Cir.1948)). *See also U.S. v. Newman,* 490 F.2d 139, 143 (3d Cir.1974). When the charge of

---

ence of a conspiracy, its omission in § 826 imposes a responsibility on the courts to employ other means of insuring the sufficiency of evidence against an accused narcotics conspirator. The absence of an overt act requirement does not eliminate the necessity for proof that an agreement has been formed with the specific intent to commit the prohibited act. *U.S. v. Klein,* 515 F.2d 751, 753 (3d Cir.1975). When charging the jury, when considering a motion for acquittal, and when reviewing the adequacy of proof, the judiciary must protect against punishment of mere words or puffing. With or without the overt act requirement, the burden is

on the prosecution to prove " 'that the conspiracy is at work.' " *Yates v. U.S.,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1956) (citation omitted).

7. 18 U.S.C. § 2 (1982) states:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

aiding and abetting is submitted to the jury, the court must include in its instruction the thought that mere knowledge of the crime is insufficient to bring about a conviction. *U.S. v. Erb*, 543 F.2d 438, 447 (2d Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976).

Adequacy of a jury charge must be determined by examining the instructions in their entirety. *U.S. v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983). The word "willfully" generally connotes the doing of a voluntary, deliberate, or intentional act. *See U.S. v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam). The trial court's charge makes clear that Bey's mere presence and knowledge of the crime would not constitute aiding and abetting, but on the contrary, that his intentional involvement was required.[8] Judged under the plain error standard, the charge was sufficient.

### IV

The judgment of the district court will be affirmed.

---

**8.** This is not to suggest that the instruction on aiding and abetting was flawless. The explanation of the specific intent necessary to support a conviction for aiding and abetting was somewhat circuitous and lacking in the clarity desirable in a jury charge.