**UNITED STATES of America, Appellee,**

v.

**Rudolph T. COVOS, Appellant.**

No. 88–1485.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 21, 1988.

Decided April 11, 1989.

Rehearing Denied May 1, 1988.

**806**

Gary L. Hoffman, Omaha, Neb., for appellant.

Stephen Dale Anderson, Asst. U.S. Atty., Omaha, Neb., for appellee.

\* Judge McMillian participated at oral argument and voted at conference in favor of the result reached here. However, because of illness, he did not vote on the final opinion.

1. The Honorable C. Arlen Beam, now United States Circuit Judge, then Chief Judge, United States District Court, District of Nebraska.

Before LAY, Chief Judge, and McMILLIAN * and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Rudolph T. Covos appeals his conviction of one count of conspiracy to distribute and possess with intent to distribute cocaine, marijuana, and methamphetamine in violation of 21 U.S.C. § 846, and of four counts of using a telephone in facilitating an act constituting a felony under 21 U.S.C. §§ 841 and 846 in violation of 21 U.S.C. § 843(b). We affirm.

I.

The Federal Bureau of Investigation (FBI), the Nebraska State Patrol, and the Omaha Police Division (OPD) suspected Daniel Bader of operating out of his home an enterprise for the purchase, sale, and distribution of controlled substances. As part of the joint investigation, an assistant United States attorney applied for and received from the district court [1] an order authorizing the installation of a pen register on Bader's telephone line.[2] During the two and one-half months it was in use, the pen register indicated that 153 calls were made from the Bader residence to Covos' girlfriend's residence, where he admittedly spent a considerable amount of his time.

Relying in part on the information provided by the pen register, a Nebraska county attorney acquired from a state court a wire communications intercept order for Bader's telephone line, pursuant to Nebraska Revised Statutes §§ 86–701 to 86–707. Members of the investigation team intercepted and recorded numerous incriminating telephone conversations, several of which involved Covos as a participant.

At Covos' trial, Daniel Bader testified that he had been selling marijuana, cocaine,

2. 18 U.S.C. §§ 3121–3126, which govern the use of pen registers, were not in effect at the time of the district court's order.

and methamphetamine from the basement of his home for over two years. In the course of his drug enterprise, Bader maintained daily written records of drug transactions. His records for January 1987, which contain repeated references to "Rudy," were admitted over Covos' hearsay objection.

Bader also testified that he regularly sold Covos marijuana from March of 1985 until January of 1987, and that Covos sometimes provided him with marijuana in exchange for cocaine and methamphetamine. On other occasions, Bader purchased cocaine and methamphetamine from Covos. Bader asserted that he and Covos had a verbal agreement that they would supply each other with controlled substances when they could. Another government witness testified that he had purchased marijuana from Covos, had helped Covos distribute marijuana, and had witnessed Covos weigh marijuana for distribution. Other witnesses testified that they had witnessed Covos purchase marijuana from Bader.

## II.

Covos argues that use of the pen register was, for various reasons, unlawful. Because investigators included the pen register data in the application for the wiretap order, Covos contends that the district court [3] should have suppressed the wiretap evidence. Assuming, without deciding, that Covos has standing to raise this issue, we hold that his challenge to the pen register data is without merit.

■ Covos first asserts that the district court had no authority to issue the pen register order and that the FBI agent named in the order unlawfully delegated his authority by allowing a fellow agent and an officer of the OPD to install the pen register. Use of the pen register, however, did not require court authorization because it is not a search under the fourth amendment. *Smith v. Maryland*, 442 U.S. 735, 737, 745–46, 99 S.Ct. 2577, 2582–83, 61

L.Ed.2d 220 (1979). We therefore see no need to consider Covos' technical challenges to the issuance and execution of the order.

■ Covos next argues that article I, section 7 of the Nebraska Constitution, unlike the fourth amendment, prohibits the warrantless use of a pen register. We have stated the general rule that "wiretap or other evidence obtained without violating the Constitution or federal law is admissible in a federal criminal trial even though obtained in violation of state law." *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). Covos relies on 18 U.S.C. § 2516(2), however, as an exception to this rule. The relevant portion of that statute provides:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any ·political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and *such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute* an order authorizing, or approving the interception of wire, oral, or electronic communications * * *.

*Id.* (emphasis added). Some courts thus have held that *"federal law* prohibits introduction of evidence obtained by state agents proceeding under section 2516(2) where state wiretap order requirements are violated." *United States v. McNulty*, 729 F.2d 1243, 1264 (10th Cir.1984) (en banc); *see also United States v. Bascaro*, 742 F.2d 1335, 1347 (11th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985); *United States v. Marion*, 535 F.2d 697, 702 (2d Cir.1976).

We need not determine whether we agree with this interpretation of section

---

**3.** The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

2516(2)[4] because the exception is not satisfied in this case. Covos does not claim that the state wiretap statute was violated; rather, he alleges that the use of the pen register was a violation of the Nebraska Constitution. Under *McNulty*, section 2516(2) incorporates the procedural requirements of a state's wiretap statute, *McNulty*, 729 F.2d at 1264–65, rather than its entire constitution. *See United States v. Barker*, 623 F.Supp. 823, 847 (D.Colo.1985). As Covos has not alleged a violation of any arguably applicable state law, his argument must fail.[5]

■ Covos' final attack on the use of a pen register is that it violates customary principles of international law. Customary international law, when applicable, is ascertained by examination of "the customs and usages of civilized nations; and, as evidence of these, to the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat." *The Paquete Habana*, 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900). Covos, however, has not provided us with sufficient authority from which we could conclude that the warrantless use of a pen register is such an invasion of privacy as to violate the international law of human rights,[6] especially when the United States Supreme Court specifically has held that use of a pen register violates no legitimate expectation of privacy under the fourth amendment to the United States Constitution. *See Smith*, 442 U.S. at 745–46, 99 S.Ct. at 2582–83. "The requirement that a rule command the 'general assent of civilized nations' to become binding upon them all is a stringent one." *Filartiga v. Pena–Irala*, 630 F.2d 876, 881 (2d Cir.1980). We therefore need not address more fundamental questions concerning the applicability of customary international law to evidentiary rulings in a domestic criminal prosecution.

We affirm the district court's admission of the wiretap evidence.

### III.

■ Covos next asserts that the district court erred in admitting Bader's daily records under the coconspirator exception to the hearsay rule. *See* Fed.R.Evid. 801(d)(2)(E). Before admitting the statements under rule 801(d)(2)(E), the district court was required to determine by a preponderance of the evidence that a conspiracy involving Bader and Covos existed and that Bader wrote the challenged statements "during the course and in furtherance of the conspiracy." *Id. See Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). In doing so, the court could consider the hearsay statements themselves. *Id.* 107 S.Ct. at 2782.

■ We conclude that the district court did not abuse its discretion by admitting the statements. The evidence showed that Bader and Covos were part of a conspiracy and that, with the exception of the entries for January 18, Bader wrote the statements in the course and furtherance of that conspiracy. Rule 801(d)(2)(E)'s requirements thus were satisfied.

■ Assuming, without deciding, that it was error to admit the records for January 18 because the declarant was unknown,

---

4. It has been argued that in enacting section 2516(2), "Congress was agreeable to allowing the states to enact measures that were more strict than the federal law, but was not agreeable to allowing more restrictive state laws to govern federal prosecutions." *United States v. McNulty*, 729 F.2d 1243, 1253 (10th Cir.1983) (Doyle, J., concurring), *rev'd on rehearing*, 729 F.2d 1243, 1264 (10th Cir.1984) (en banc).

5. Under our reasoning, we need not determine whether the Nebraska Constitution prohibits the warrantless use of a pen register. We note in passing, however, that the Nebraska Supreme

Court recently declined to consider this question, *see State v. Hinton*, 226 Neb. 787, 415 N.W.2d 138, 144 (1987), because the appellant did not specify the constitutional provision allegedly violated by use of the pen register. *Id.*

6. Covos cites to *Malone v. United Kingdom*, 7 E.H.R.R. 14, 46 (1984), a case in which the European Court of Human Rights determined that use of a pen register violated the European Convention for the Protection of Human Rights and Fundamental Freedoms, Nov. 4, 1950, art. 8, Europ.T.S. No. 5.

such error was harmless. All information in that day's entries was contained in other properly admitted entries.

### IV.

■ Covos next argues that the district court erred in failing to instruct the jury that an overt act is a required element of proof under 21 U.S.C. § 846. Section 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." This court, in the course of analyzing the sufficiency of the evidence, often has included an overt act in the list of elements that must be proved under section 846. *See, e.g., United States v. Richmann,* 860 F.2d 837, 841 (8th Cir.1988); *United States v. Mims,* 812 F.2d 1068, 1074 (8th Cir.1987); *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir.1985); *United States v. Evans,* 697 F.2d 240, 245 (8th Cir.), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983); *United States v. Hutchinson,* 488 F.2d 484, 490 (8th Cir. 1973), *cert. denied sub nom. Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). In other cases, this court has suggested that section 846 does not require proof of an overt act. *See Henderson v. United States,* 815 F.2d 1189, 1191 (8th Cir.1987) (omitting overt act from list of elements that must be proved under section 846); *United States v. Matlock,* 786 F.2d 357, 360 (8th Cir.1986) (same); *United States v. Lewis,* 759 F.2d 1316, 1352 (8th Cir.) (same), *cert. denied sub nom. Milburn v. United States,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985); *United States v. Grego,* 724 F.2d 701, 704 (8th Cir.1984) (same); *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976) (amendment of indictment to omit overt act is innocuous "in a case where no overt acts are required (21 U.S.C. § 846)"). We thus are faced with conflicting decisions in this circuit, none of which explicitly analyzes whether section 846 requires proof of an overt act.

The overwhelming weight of authority in other circuits holds that section 846 does not require proof of an overt act in addition to proof of a conspiracy. *See, e.g., United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.), *cert. denied sub nom. Crummey v. United States,* — U.S. —, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988); *United States v. Pumphrey,* 831 F.2d 307, 308–09 (D.C.Cir.1987); *United States v. A–A–A Elec. Co.,* 788 F.2d 242, 245 (4th Cir.1986) (dictum); *United States v. Brock,* 782 F.2d 1442, 1444 (7th Cir.1986); *United States v. Bey,* 736 F.2d 891, 895 (3d Cir.1984); *United States v. Badolato,* 701 F.2d 915, 920 (11th Cir.1983); *United States v. Ricardo,* 619 F.2d 1124, 1128 (5th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980); *United States v. Bermudez,* 526 F.2d 89, 94 (2d Cir.1975), *cert. denied sub nom. Diaz–Martinez v. United States,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976); *United States v. DeJesus,* 520 F.2d 298, 301 (1st Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1975). In addressing this issue, the United States Court of Appeals for the District of Columbia Circuit recently stated:

> In contrast to the general criminal conspiracy statute, 18 U.S.C. § 371, which explicitly requires proof of an overt act, § 846 makes no mention of any such requirement. Absent clearly expressed legislative intent to the contrary, this unambiguous statutory language settles the question. *Consummer Products Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).
>
> * * * [T]he special purpose of the Controlled Substances Act supports the notion that Congress was legislating a distinct definition of conspiracy in § 846. Congress certainly must be presumed to have been aware of the general conspiracy statute when it enacted a new narcotics control scheme employing the conspiracy concept and left the overt act requirement out. *United States v. Bey,* 736 F.2d 891, 894 (3d Cir.1984). Indeed, the Supreme Court has expressly declined to read an overt act requirement

into several other conspiracy statutes that are silent on the subject. *See, e.g., Singer v. United States,* 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285 (1945) (Selective Service Act); *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) (Sherman Act).

*Pumphrey,* 831 F.2d at 308–09 (footnotes omitted). We find this reasoning persuasive. We therefore choose to follow those decisions in this circuit holding that section 846 does not require proof of an overt act in addition to proof of a conspiracy.

▮ Covos, relying on *United States v. Dempsey,* 733 F.2d 392 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed. 2d 323 (1984), argues in the alternative that because the indictment alleged overt acts they must be proved at trial. We do not agree. "Allegations not essential to prove the crime for which the defendant is charged are mere surplusage and need not be proved or embodied in the instructions to the jury." *United States v. Brown,* 604 F.2d 557, 560 (8th Cir.1979); *see Pumphrey,* 831 F.2d at 309. The district court's instructions to the jury on the conspiracy charge thus were not erroneous.

### V.

▮ Finally, Covos challenges the sufficiency of the evidence to convict him of four counts of violating 21 U.S.C. § 843(b). Viewing the evidence in the light most favorable to the government, *United States v. O'Connell,* 841 F.2d 1408, 1424 (8th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), we find the evidence more than sufficient to establish the violations.

We have carefully reviewed Covos' remaining allegations of error and find them to be without merit. We therefore affirm the convictions on all counts.